Orazio STANTINI, Petitioner,

v.

UNITED STATES of America, Respondent.

Robert Bisaccia, Petitioner,

v.

United States of America, Respondent.

Nos. 97 CV 3659(ILG), 97 CV 6683(ILG).

United States District Court, E.D. New York.

June 12, 2003.

Orazio Stantini, New York City, pro se.

David I. Schoen, Montgomery, AL, for Orazio Stantini.

Robert Bisaccia, Trenton, NJ, pro se.

Anthony J. Iacullo, Iacullo & Martino, LLP, Montclair, NJ, David Schoen, Montgomery, AL, Alan Dexter Bowman, Newark, NJ, for Robert Bisaccia.

Emily Berger, Assistant U.S. Attorney, Brooklyn, NY, James Orenstein, U.S. Dept. of Justice, Washington, DC, for U.S.

## MEMORANDUM AND ORDER

GLASSER, District Judge.

The petitioners have filed applications with this Court seeking Certificates of Appealability which would enable them to appeal this Court's Memorandum and Order reported in 2000 WL 10314. They have also filed motions pursuant to Fed. R.Civ.P. 59(e) and 60(b) addressed to that Memorandum and Order. The background of these proceedings has been set forth in varying degrees of detail and on various issues over a period of 8 years and reported in *United States v. Bisaccia,* 1995 WL 228397 (E.D.N.Y.1995), *aff'd, United States v. Stantini,* 85 F.3d 9 (2d Cir.1996), *cert. denied, Bisaccia v. United States,* 519 U.S. 1000, 117 S.Ct. 498, 136 L.Ed.2d 390 (1996); *Bisaccia v. United States,* 1997 WL 803721 (E.D.N.Y.1997); *Stantini v. United States,* 986 F.Supp. 736 (E.D.N.Y. 1997), denied in part and remanded, *Stantini v. United States,* 140 F.3d 424 (1998); *Bisaccia v. United States,* 2000 WL 703014 (E.D.N.Y.2000); *Bisaccia v. United States,* 2000 WL 1677747 (E.D.N.Y.2000).

Familiarity with the foregoing will be presumed.

## BACKGROUND

Although I have presumed that the reader is familiar with the numerous prior proceedings in this case, perhaps I should also presume the unlikelihood that they will be accessed and read and that a summary historical evolution of this case would be useful.

Stantini and Bisaccia were convicted of conspiring to murder and murder following a jury trial in November, 1993. Stantini was subsequently sentenced to a term of imprisonment of 324 months and Bisaccia to life in prison. The victim was Francesco Oliveri who was murdered in retaliation for a murder committed by Oliveri's sons of a made member of the Gambino Organized Crime Family. Participating in executing that homicide were Bisaccia, Stantini, Lorenzo Mannino, Joseph Gambino and Salvatore Gravano.

Mannino and Gambino were charged with the Oliveri murder in the Southern District of New York. Their trial began in January 1993, and ended in a mistrial in June 1993. Mannino was represented by Charles Carnesi. Because Carnesi had been under investigation by the United

States Attorney in that district, a *Curcio* hearing was held to ascertain whether he could serve as Mannino's counsel free from conflict. At that hearing Mannino was represented by Alan Futerfas and at the conclusion of it Carnesi was permitted to continue to serve.

Stantini and Bisaccia were indicted in this district in April, 1993. The other participants in the murder were named as unindicted co-conspirators. Stantini was represented at trial by Carnesi. Bisaccia was represented by Joel Winograd and George Abdy. As had been noted, they were both found guilty at the end of a six day trial in November 1993.

Mannino and Gambino were re-tried after Bisaccia and Stantini were convicted, but before they were sentenced. In that interval, Stantini moved for a new trial pursuant to Rule 33 Fed. R. Cr. P. and to set aside his conviction pursuant to 28 U.S.C. § 2255. That motion was based upon his claim that Carnesi, representing both him and Mannino, was conflicted and thus was restrained from representing him effectively. Bisaccia claimed that he was also prejudiced by Carnesi's ineffectiveness and he joined in that motion. Their motions were denied without a hearing in 1995 WL 228397, *supra*.

Stantini and Bisaccia then appealed their conviction and sentence and the denial of their post-conviction motions. Stantini was represented on appeal by Futerfas and Bisaccia by David Lewis of the Legal Aid Society. The Court of Appeals affirmed the conviction and denials in 85 F.3d 9 and certiorari was denied in 519 U.S. 1000, 117 S.Ct. 498, 136 L.Ed.2d 390 in 1996.

In the following year, 1997, Bisaccia and Stantini filed separate motions pursuant to 28 U.S.C. § 2255. Stantini re-asserted Carnesi's ineffective assistance and Futerfas' ineffectiveness in failing to establish it on appeal. Stantini also added a violation of *Brady* claim and new assertions of Carnesi's ineffectiveness. On this motion, Stantini was represented by his present counsel, David Schoen.

Bisaccia revived his previous claims of Winograd's ineffectiveness and, like Stantini, claimed his appellate counsel was ineffective in failing to establish that. He, too, added a violation of *Brady* claim alleging that the government wrongfully withheld information which could have been used to impeach Gravano (a cooperating witness at trial) and which was also exculpatory. He was represented by new counsel, Robin Kay Lord.

This Court noting that the first post-conviction motion was styled as being pursuant to Rule 33 and § 2255, regarded this motion as a second and successive one and transferred it to the Court of Appeals in accordance with *Liriano v. United States*, 95 F.3d 119 (2d Cir.1996) for a determination of whether it should be permitted to be filed. *See,* 986 F.Supp. at 739, *supra*. The defendants not having been sentenced when the first motion was decided, the Court of Appeals held that this motion was not second or successive pursuant to § 2255 and re-transferred it. 140 F.3d 424, *supra*.

In connection with the return to this Court, extensive briefs were submitted by the parties which addressed the issues initially raised in those motions and added new motions to disqualify the Court pursuant to 28 U.S.C. § 455 and for discovery and inspection. In the opinion reported in 2000 WL 703014, *supra*, those motions and the § 2255 motion were denied. Stantini's and Bisaccia's claims of ineffective assistance by their respective counsel were rejected as were their *Brady* claims.

On May 1, 2000, Stantini moved for reconsideration of this Court's opinion or, in

the alternative, for relief pursuant to Rules 59(e) and 60(b). Bisaccia joined in this motion. This motion was bottomed upon the claim that Stantini's sentence was based upon a flawed guidelines application in violation of the Ex Post Facto Clause of the United States Constitution. In a letter submission dated August 2, 2000, Stantini claimed that his sentence ran afoul of *Apprendi*. Once again, this Court, for the reasons given in 2000 WL 1677747, *supra*, viewed this motion as a second or successive § 2255 motion and referred it to the Court of Appeals. The Court of Appeals in *Stantini v. United States*, 986 F.Supp. 736 (2d Cir.2001), "Ordered that the portion of the authorization motion seeking to raise claims ... in petitioner's Fed. R.Civ.P. 60(b) motion is dismissed as unnecessary and the case is transferred [to this Court] for further consideration in light of ... *Rodriguez v. Mitchell*, 252 F.3d 191, 198–200 (2001)" (holding that a Fed.R.Civ.P. 60(b) motion should not be construed as an application to file a second or successive 28 U.S.C. § 2254 petition). The Court of Appeals further ordered "that the portion of the authorization seeking to raise a new claim is denied because the claim is not based on newly discovered evidence or on a new rule of constitutional law. *See* 28 U.S.C. § § 2255, 2244(a), (b)." A precisely similar mandate was issued by the Court in *Bisaccia v. United States* on June 20, 2001.

▮ Stantini did not withdraw his Rule 59(e) motion to alter or amend the judgment. That motion must be made within ten days of the judgment, a limitation which is strictly construed and is jurisdictional and cannot be extended in the discretion of the Court. *Lichtenberg v. Besicorp Group, Inc.*, 204 F.3d 397 (2d Cir. 2000). Because the motion was not timely filed, it is barred. The government is correct in also calling attention to the

Mandate of the Court of Appeals remanding the case for consideration by this Court of the Rule 60(b) motion only. A consideration of the Rule 59(e) motion is, therefore, beyond the Mandate's scope. *See United States v. Quintieri*, 306 F.3d 1217 (2d Cir.2002).

This application for a Certificate of Appealability was filed on November 6, 2001. Oral argument was heard on January 11, 2002, following briefing by all sides. Thereafter, further letter submissions on behalf of Stantini were received dated August 14, 2002, October 29, 2002, January 17, 2003, February 13, 2003 and February 25, 2003. The last submission requesting that the Court conduct a "full and thorough inquiry" based upon an indictment of Gravano in New Jersey was denied in a Memorandum and Order dated March 3, 2003.

Letters on behalf of Bisaccia, dated November 7, 2002, January 23, 2003 and February 27, 2003, advised that he joined in Stantini's submissions.

Stantini has requested that a "Writ of Mandamus" issue from the Court of Appeals averring that this proceeding has remained dormant since January 11, 2002. As has been indicated, submissions in this matter have continued to be received by this Court as recently as February 27, 2003. If Speedy Trial Act considerations are analogous, the time during which motions are pending is excluded until all submissions are in. *See, e.g., United States v. Shakur*, 1987 WL 12404 (S.D.N.Y.1987), *United States v. Piasecki*, 969 F.2d 494, 500 (7th Cir.1992) ("Once a motion is filed ... the excludable delay continues ... until the submissions necessary for the court to reach a decision are complete.") The submissions continued to apprise the Court of recently decided cases the petitioners believed were important for me to

consider in arriving at a decision on their motions.

In his three page letter of August 14, 2002, counsel called the Court's attention to three cases decided by the Court of Appeals for this circuit. He communicated his understanding of them to be that a district court should allow a § 2255 litigant to freely amend his claims to permit a "full and fair shot at litigating [them] on collateral review." He also supplemented his argument that the sentencing guidelines were erroneously applied to Stantini by the citation of five additional cases and his summary of them.

In his four page letter of October 29, 2002, he advanced further arguments in support of the guidelines issue.

In his two page letter of February 3, 2003, he continued "with his practice of writing to bring to the Court's attention (without extensive argument) recent decisions which are relevant to issues before this Court . . . ."

And, finally, in a six page letter dated February 25, 2003, he requested a "full independent inquiry discovery and an evidentiary hearing" prompted by events described in that letter. As has been indicated, his request was denied in a Memorandum and Order dated March 3, 2003.

His application for a writ of mandamus would suggest that the submissions are now complete.

### Discussion

### I. *Certificate of Appealability*

Five issues require consideration for a determination of Stantini's and Bisaccia's application for a Certificate of Appealability ("COA") and they will be addressed in order in which they are listed in Stantini's Application ("SA") at 2–3.

#### (1) *Their Disqualification Motion*

The initial inquiry in this regard must be whether a COA can properly be issued and the answer is to be found in 28 U.S.C. § 2253(c) which provides in relevant part:

(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the Court of Appeals from

\* \* \* \* \* \*

(B) the final order in a proceeding under section 2255

(2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

 The motion for my disqualification was made "pursuant to 28 U.S.C. § 455 and the Due Process Clause of the Fifth Amendment to the United States Constitution." SA5. The gravamen of his claim to entitlement of a COA as regards the denial of this motion would appear to be the disregard of his request that this motion be decided before consideration was given to the other claims upon which his § 2255 motion rested so that in the event it was denied, he could seek a writ of mandamus compelling my recusal. The disregard of that request gives rise to no constitutional infirmity of which this Court is aware, nor has Stantini provided any authority that it does. In *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997), the Court wrote " . . . most questions concerning a judge's qualifications to hear a case are not constitutional ones, because the Due Process Clause of the Fourteenth Amendment establishes a constitutional floor, not a uniform standard. Instead, these questions are, in most cases, answered by common law, statute, or the professional standards of the bench and bar." (Internal citations omitted).

In 2000 WL 703014, *supra,* at *1 n. 1, I wrote that the "recusal motion gives every appearance of being untimely," given the law of this Circuit requiring that such motion be made "at the earliest opportunity" after bias is ascertained, citing *United States v. Yonkers Bd. of Educ.,* 946 F.2d 180, 183 (2d Cir.1991). The merits of the motion were addressed nevertheless "in order to demonstrate, even more conclusively than the law strictly requires, that both justice and its appearance will be honored in the adjudication of the motion ...." The merits of the motion were fully considered and that consideration compelled the Court to conclude that there weren't any and that it must be denied. The applicants have failed to make a substantial showing, indeed, they made no meaningful showing at all, that the denial of this motion was constitutionally wanting.

### 2(a). *The Denial of the Request for Discovery*

■ The applicants moved for discovery pursuant to Rule 6(a) of the Rules Governing Section 2255 Proceedings and for an evidentiary hearing on their claims. Rule 6(a) provides that discovery may be granted "if, and to the extent that, the judge in the exercise of his discretion and for good cause shown grants leave to do so, but not otherwise."

■ To begin with, "A habeas petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course." *Bracy v. Gramley,* 520 U.S. 899, 904, 117 S.Ct. 1793, 138 L.Ed.2d 97 (1997). The Court then equated the "good cause" standard of Rule 6(a) with an assessment of the discovery request as follows, quoting *Harris v. Nelson,* 394 U.S. 286, 299, 89 S.Ct. 1082, 22 L.Ed.2d 281 (1969): "Where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is ... entitled to relief, it is the duty of the courts to provide the necessary facilities and procedures for an adequate inquiry." 520 U.S. at 908–909, 117 S.Ct. 1793.

In the denial of their discovery request, the court was unable to discern any showing of specific allegations which would even remotely suggest the development of facts that would demonstrate an entitlement to relief. Instead, the court concluded "that the petitioners have done little more in their voluminous submission ... than offer speculative variations on the ineffective assistance claims already specifically addressed and rejected by both this court and the Court of Appeals." 2000 WL 703014*6.

Stantini's invocation of *Bracy* as providing comfort for his position is misplaced. Bracy was convicted of murder and sentenced to death by a state court judge who was later convicted on federal charges of taking bribes from criminal defendants in other cases in which they were charged with murder. Bracy sought to show that the acceptance of bribes in those cases rendered him actually biased against the state, but also induced a compensatory bias against defendants who did not bribe him to create the appearance that he wasn't "soft" on criminal defendants. In that context, the Court found that Bracy showed good cause for his request for discovery of trial transcripts, depositions of the judge's associates and the judge's rulings to show a pattern of bias. On the facts of that case, the Court held that the primary presumption that public officials have properly discharged their official duties was not applicable. No effort is made by Stantini to even suggest the existence of a relationship between those facts and the facts in this case. Nor have the

applicants succeeded in making a "substantial showing" that the denial of their discovery motion deprived them of a constitutional right.

### 2(b). *The Denial of an Evidentiary Hearing*

§ 2255 provides in part:

Unless the motion and the files and records of a case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States Attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto
. . . .

In denying their application for an evidentiary hearing, I wrote that § 2255 does not entitle the petitioners to an evidentiary hearing as a matter of right. I then concluded that the record conclusively showed that a hearing was requested for the sole purpose of re-litigating claims already decided against them or raise no reasonable inference that § 2255 relief should be granted, "the proper course is to determine the motion on the record, without further expenditure of judicial resources." 2000 WL 703014 at *6.

▋ I note that on appeal from his conviction, Stantini also contended that this Court should have held an evidentiary hearing on his claim of ineffective assistance of counsel. The asserted conflict under which his trial counsel (Charles Carnesi), labored by virtue of his representation of a different defendant, in a different case, in a different district and the relationship between Carnesi, Stantini and Alan Futerfas, another lawyer in those events, was discussed at some length by the Court of Appeals. Each and every argument advanced by Stantini in support of his claim that Carnesi was conflicted and therefore ineffective was carefully analyzed by that Court. Those arguments, succinctly stated, were: (1) that the court failed its obligation to inquire into facts and circumstances of a possible conflict of interest; (2) that Carnesi's dual representation resulted in an actual conflict which, in turn, resulted in providing ineffective assistance in plea negotiations and defense strategy; (3) that the court erroneously rejected those claims without the benefit of an evidentiary hearing. In rejecting his arguments, the Court held that Stantini showed no lapse in representation, that although pleading guilty was a defense strategy that was not pursued, Stantini offered no evidence that the strategy was not pursued because he did not want to plead.[1] Stantini offered no evidence that the plea strategy was not pursued because Carnesi was conflicted or that he was even the least bit interested in pleading guilty. Stantini's arguments that defense strategies were forgone was not persuasive, said the Court, because "to a large extent Carnesi actually pursued the defense strategy that Stantini argued Carnesi ignored because of his loyalty to Mannino . . . . Stantini's claim is, at bottom that his interests and Carnesi's (and by extension Mannino's) diverged with respect to any concession of Mannino's participation in the murder, and that Carnesi declined to make such a concession at trial because of his conflicting loyalty to Mannino. We disagree on both counts . . . . Neither Stantini nor Carnesi has alleged any facts regarding the selection of defense strategy at

---

1. In this regard it is important to note that "myriad tactical decisions made by defense attorneys throughout the course of their defense implicitly involve the waiver of constitutional rights but do not necessitate the personal consent of the defendant . . . . Thus, when defense counsel 'makes tactical decisions . . . with constitutional implications,' the defendant's consent is not mandated." *United States v. Joshi*, 896 F.2d 1303, 1307 (11th Cir.1990) (internal citations omitted.)

trial. There is no persuasive indication in the record before us that the refusal to concede the guilt of Mannino was necessitated by anything other than a determination as to the best possible defense to put on." Based upon that analysis of the record in the light of Stantini's claims, the Court concluded that "On the basis of the record before it, the district court did not abuse its discretion in refusing to grant an evidentiary hearing." 85 F.3d at 17–19. As regards what can only be charitably described as Bisaccia's tag along ineffective assistance claim, the Court held that "Because Bisaccia has failed to raise a plausible ineffectiveness claim, there is no need for further factual development in the district court." 85 F.3d at 20.

The citation of cases which discuss the black letter principles regarding the conflict of interest are all too familiar to be repeated. Those principles are almost always the rungs leading to an ineffective assistance claim and their application is dictated by the fact intensive context in which they are sought to be invoked. Such an application has been repeatedly made here and repeatedly decided against them. The discussion of cases cited by the applicants are not helpful in a determination to be made in this case, namely, whether the application for a COA should be granted. Given the record which has already been amassed and discussed in its various litigated reincarnations, it is this Court's view that they have not made a substantial showing that they have been denied a right which is constitutionally theirs.

### 3. *Ineffective Assistance of Trial Counsel*

*Carnesi*

■ The claimed ineffective assistance of Carnesi was presented and rejected in 1995 WL 228397 (E.D.N.Y.1995) and that rejection was affirmed by the Court of Appeals in an in depth discussion in 85 F.3d 9 (2d Cir.1996). Surely, Stantini is foreclosed from obtaining a COA as to the ineffective assistance of Carnesi claims that were decided there.

### 4. *Ineffective Assistance of Appellate Counsel*

*Futerfas*

■ Futerfas represented Stantini before the Court of Appeals in 1996. Stantini claims that the rejection by that Court of his assertion of Carnesi's ineffectiveness was attributable to Futerfas's ineffectiveness in presenting it.

The government contends, at the outset, that in this Court and the Court of Appeals, the claims of ineffective assistance that were litigated on Stantini's behalf by Futerfas, were collateral to what appears to be the sole issue raised on direct appeal, namely, that the jury instruction on conspiracy was erroneous. 85 F.3d at 20–21. From that it follows, the government continues, that since the defendant has no constitutional right to counsel in litigating a collateral claim, he cannot raise an ineffective assistance claim. GM [2] 27–29 citing, among others, *Pennsylvania v. Finley*, 481 U.S. 551, 555–56, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987). *See also United States v. Angelone*, 894 F.2d 1129 (9th Cir.1990) (Petitioner, who has no constitutional right to counsel when mounting collateral attack upon conviction, could not raise ineffective assistance claim on collateral post conviction petition.).

The foregoing aside, Futerfas *did* present the bases for asserting Carnesi's al-

**2.** GM refers to Government's Memorandum in Opposition to a COA.

leged conflict arising out of his representing Mannino in an earlier and related case. His arguments on behalf of Stantini were addressed in 1995 WL 228397 (E.D.N.Y. 1995) and led the Court to conclude that "The defendant must establish a conflict that is real, not one that is predicated upon an 'attenuated hypothesis having little consequence to the adequacy of the representation' .... Generalities, speculative and conclusory assertions will not do. The mere 'possibility of a conflict is insufficient to impugn a criminal conviction.' To demonstrate a violation of his Sixth Amendment right, Stantini must establish that an actual conflict of interest adversely affected his lawyer's performance ..., and the mere representation of another defendant in a related case does not constitute actual conflict." 1995 WL 228397 at *5. The Court also concluded that "the claim that another trial strategy was available to Carnesi is similarly specious .... Stantini has not demonstrated that a plausible alternative defense strategy or tactic of any substance could have been pursued but was not because of Carnesi's other loyalties." 1995 WL 228397 at *6.

Futerfas pursued Stantini's belated discovery of Carnesi's claimed conflict in the Court of Appeals, which affirmed this Court's rejection of it, writing that Stantini's "arguments regarding defense strategy allegedly foregone are not persuasive. To a large extent Carnesi actually pursued the defense strategy that Stantini argues Carnesi ignored because of his loyalty to Mannino .... Stantini's claim is, at bottom, that his interest and Carnesi's (and by extension Mannino's) diverged with respect to any concession of Mannino's participation in the murder, and that Carnesi declined to make such a concession at trial because of his conflicting loyalty to Mannino. We disagree on both counts." 85 F.3d at 18.

The claimed conflict of Futerfas was argued once again, this time on behalf of Stantini by new counsel and once again rejected with the conclusion, after due consideration to essentially the same arguments presented yet again here, that Futerfas's representation of Stantini was not constitutionally defective. 2000 WL 703014 at *11.

Aside from expressing disagreement with the Court's conclusions in terms which can only be described, regrettably, as inappropriately intemperate, Stantini has made no showing of a denial of a constitutional right that, in this Court's view, can be quantified as being substantial.

### 5. The Brady/Kyles Claim

■ The gravamen of this claim is that the government failed to disclose an "understanding" or a "deal" that the government made with Gravano that he would never have to implicate his former friends by being allowed to avoid testifying against them. After noting that this Court "rejected the issue out of hand, specifically finding 'no conceivable basis' for a Brady claim," he concludes by respectfully submitting without more, "that other jurists would view the issue differently." SA at 20–21. I can add nothing in response to this claim to what I previously wrote in 2000 WL 703014 at *14 except that I find no explanation of why this Court's rejection of his claim was so deficient as to deprive him of a constitutional right. His request for a Certificate of Appealability on this ground is denied.

### II. Rule 60(b) Motion

The different objectives sought to be achieved by a motion pursuant to Rule 60(b) Fed.R.Civ.P. and by a petition for habeas corpus pursuant to 28 U.S.C. § 2255 has been succinctly stated in Rod-

*riguez v. Mitchell,* 252 F.3d 191, 199 (2d Cir.2001) to be that the Rule 60(b) motion relates to the integrity of the federal habeas proceeding and the § 2255 motion relates to the integrity of the criminal trial.

Stantini relies on Rule 60(b)(1) and (6) for the relief he seeks and not specifying the subdivisions upon which he relies, it is assumed that Bisaccia relies upon those as well.

Rule 60(b)(1) provides in substance that relief from an order or judgment may be granted for reasons of mistake, inadvertence, surprise or excusable neglect and under (b)(6) for any other reason justifying relief from the operation of the judgment. The motion pursuant to 60(b)(1) must be made within one year after the order or judgment was entered and pursuant to 60(b)(6) within a reasonable time. The motion was timely made.

The relief sought pursuant to 60(b)(1) is addressed to mistake, inadvertence, surprise or excusable neglect in connection with the habeas proceeding and not in connection with the trial at which the habeas proceeding is aimed. 252 F.3d at 198–99.

Stantini gives three reasons for his claimed entitlement to relief pursuant to 60(b)(1). Those reasons are: (1) he was only required to give examples of ineffective assistance until a hearing on those issues was afforded; (2) he expected his recusal motion to be decided before the other motions he made so that, in event the recusal motion was denied, he could seek a writ of mandamus before substantiating the ineffective assistance claims and, in addition, while the recusal motion was pending, he could not amend his petition to add new examples of ineffective assistance; and (3) his counsel's family medical emergencies prevented promptly raising the ground upon which this 60(b) motion is based. Those reasons will be addressed

(1) The sufficiency of examples prior to a hearing.

 To begin with, no authority to guide the Court is provided for that proposition either by Stantini in support of it, or by the government to negate it. Guidance may be found, however, in the Rules Governing Section 2255 Proceedings for the United States District Court. Rule 8 does not mandate a hearing, rather, a determination is to be made by the judge upon a review of the proceedings whether a hearing is required. A determination was made that a hearing was not required for reasons which were given in this Court's Memorandum and Order reported in 2000 WL 703014 at *5–*6 as follows:

> Section 2255 petitioners are not entitled to an evidentiary hearing as a matter of right, and the record upon which § 2255 motions are decided may be expanded by the addition of affidavits and documentary exhibits as it has been here, without thereby necessitating such a hearing (citation omitted) where, as is also true here, the record conclusively shows that a petitioner seeks discovery and a hearing for the sole purpose of relitigating claims already decided against him, claims he is procedurally barred from raising, or new claims that raise no reasonable inference that § 2255 relief should be granted, the proper course is to determine the motion on the record without further unnecessary expenditure of judicial resources. Accordingly, petitioner's motion for ... an evidentiary hearing is denied.

(2) An expectation that the recusal motion would be decided first

 Stantini claims that he entertained the expectation that his request for a preliminary determination of his recusal motion would be granted before he would be

required to substantiate his ineffective assistance claim. If that motion were denied he would then seek appellate review by way of mandamus, further forestalling a need to amend his petition to provide further examples of ineffective assistance. It was, and remains, this Court's view for reasons discussed at some length, that the recusal motion was without merit as a matter of law, 2000 WL 703014 at *3–*5, a view about which I am entirely confident, reasonable jurists would not disagree.

 Although I have presided over the trial of this case and over post-trial proceedings in 1995, 1997 and 1998, no motion seeking my recusal was made during that period. Although 28 U.S.C. § 144 expressly provides that a recusal motion must be made timely, that requirement does not appear in § 455, but timeliness has been read into that section. *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326, 333 (2d Cir.1987). One of the factors to be considered in determining timeliness was stated in *Apple* to be whether granting the motion would be a waste of judicial resources. 829 F.2d at 334. No allegation has ever been made, nor could it be, that I harbor some personal animus towards either Stantini or Bisaccia. It is well settled that a motion for recusal requires a showing of personal bias which is ordinarily based on extra-judicial conduct and not conduct which arises in a judicial context. The motion, brought pursuant to 28 U.S.C. § 455, is based on a claimed perception of partiality, based, in turn, as near as can be ascertained, upon my adverse determinations of their assorted claims for post-trial relief. The law in this Circuit is consistently and clearly announced to be that adverse rulings by a judge cannot *per se* create the appearance of bias under § 455(a). *In re International Business Machines Corp.*, 618 F.2d 923, 929 (2d Cir.1980) ("A trial judge must be

free to make rulings on the merits without the apprehension that if he makes a disproportionate number in favor of one litigant, he may have created the impression of bias. Judicial independence cannot be subservient to a statistical study of the calls he has made during the contest."); *Wilkerson v. McCarthy*, 336 U.S. 53, 65, 69 S.Ct. 413, 93 L.Ed. 497 (1949) ("A timid judge, like a biased judge, is intrinsically a lawless judge.") Cases to the same effect can be cited endlessly.

In its memorandum of law in opposition to this motion, the government asserts that requiring "a recusal motion to be decided first, to permit review via mandamus, would contradict established legal principles." GM 16. It cites in support of that view, 28 U.S.C. § 1291 as reflecting the intention of Congress to limit the jurisdiction of the Court of Appeals to "final decisions of the district courts"; and *United States v. Hollywood Motor Car Company, Inc.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) which decided that "departures from the rule of finality [are permitted only] in a limited number of cases falling within the 'collateral order' exception delineated in *Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 545–57, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949)." Such orders must conclusively "determine the disputed question, resolve an important issue completely separate from the merits of the action and be effectively unreviewable on appeal from final judgment." The government then contends that the defendants are unable to meet that standard and, therefore, would not be "entitled to appellate review by way of the extraordinary writ of mandamus" designed to be used only in extraordinary cases and not as a substitute for appeal.

The cases decided by the Court of Appeals for this circuit take a broader view. The case cited perhaps most frequently for

the contrary view is *Rosen v. Sugarman*, 357 F.2d 794 (2d Cir.1966) (Friendly, J.) which held that "in an appropriate case mandamus could issue to order such disqualification" but added that "To be sure, writs in such cases should be used sparingly and only when the facts alleged clearly call for relief, lest mandamus to review refusals of disqualification become a potent weapon for harassment and delay." 357 F.2d at 796–97. *See also In re United States*, 158 F.3d 26, 30 (1st Cir.1998) ("For both prudential and practical reasons, we must be slow to 'foster piecemeal review and disturb the historic relationship between trial and appellate courts' ... It is only in unusual situations that interlocutory review of a judge's refusal to step aside is available through mandamus."); *Apple v. Jewish Hospital and Medical Center*, 829 F.2d 326 (2d Cir.1987) ("[I]t is well-settled that the exceptional remedy of mandamus will only be invoked where the petitioner has demonstrated that its right to such relief is 'clear and indisputable.' ") *See Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 18, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983). Other than disagreement with this Court's prior rulings, the petitioners have pointed to no extra-judicial conduct which would make their entitlement to relief clear and indisputable. To grant their recusal motion would have been a waste of judicial resources.

(3) Timeliness issue notwithstanding, the Rule 60(b) motion is considered in its entirety.

### The Sentencing Issue

█ Stantini and Bisaccia were convicted of violating 18 U.S.C. § § 1952B(a)(1) and (a)(5). Those statutes have been renumbered without substantive change to 18 U.S.C. § § 1959(a)(1) and (a)(5). The current statutory references will be used hereafter.

§ 1959(a)(1) provides in relevant part as follows:

(a) Whoever ... for the purpose of maintaining or increasing position in an enterprise engaged in racketeering activity, murders ... any individual in violation of the laws of any State or the United States ... shall be punished -

(1) for murder, by death or life imprisonment, . . . .

(5) for attempting or conspiring to commit murder ... by imprisonment for not more than ten years. . . .

In charging the jury regarding Count Two of the indictment, alleging a violation of § 1959(a)(1), the Court instructed them that the government must prove each of the following elements beyond a reasonable doubt to warrant a finding of guilt:

1. That the defendant had a position in an enterprise which was engaged in racketeering activity;

2. That the defendant murdered Francesco Oliveri;

3. That the defendant acted knowingly and wilfully; and

4. That the defendant's purpose in committing the murder was to maintain or increase his position in the racketeering enterprise.

For the purpose of this motion, the instruction on the second element only, namely, that the defendant murdered Francesco Oliveri, is relevant. At the outset, it is important to note that § 1959 makes punishable the murder of an individual "in violation of the laws of any State or the United States." The only section of Title 18 of the United States Code addressing a murder such as is charged here is § 1111. That section provides in relevant part as follows:

(a) Murder is the unlawful killing of a human being with malice aforethought.

Every murder perpetrated by ... any ... kind of willful, deliberate ... and premeditated killing; ... is murder in the first degree.

Any other murder is murder in the second degree.

(b) Within the special maritime and territorial jurisdiction of the United States whoever is guilty of murder in the first degree shall be punished by death or by imprisonment for life; whoever is guilty of murder in the second degree shall be imprisoned for any term of years or for life.

Although a literal reading of § 1111(a) would suggest that it is the statute that should be applicable to the crime with which the defendants were charged, it was not the statute about which the jury was instructed. The cases addressing the scope of § 1111 are very few but construe it as being applicable only to murders "within the special maritime and territorial jurisdiction of the United States" by virtue of the limitation of subsection (b). In *United States v. Bin Laden,* 92 F.Supp.2d 189 (S.D.N.Y.2000), Judge Sand wrote, at p. 204: "Section 1111(a) defines murder in the first and second degrees. Section 1111(b) specifies the penalties for each of these two types of murder, and *limits the reach of Section 1111 to murders committed '[w]ithin the special maritime and territorial jurisdiction of the United States.' 18 U.S.C. § 1111(b)*." (emphasis added). Further on, at p. 205, he wrote: "The actual Section 1111, however, includes its own jurisdictional element, viz., 1111(b)— *which limits Section 1111 as a whole to murders committed '[w]ithin the special maritime and territorial jurisdiction of the United States.'*" (emphasis added). *See also United States v. Parker,* 622 F.2d 298, 301 (8th Cir.1980) ("It is essential to ... the premeditated murder charges in this case that the actions constituting [that] offense took place 'within the special

maritime and territorial jurisdiction of the United States'"); *United States v. Wilson,* 565 F.Supp. 1416, 1428–29 (S.D.N.Y.1983) (Weinfeld, J.). Francisco Oliveri was not murdered "within the special maritime and territorial jurisdiction of the United States" and, therefore, § 1111 was not applicable. For that reason and because § 1959(a) explicitly addresses "murders in violation of the laws of any State," it was necessary and entirely appropriate to invoke the Assimilative Crimes Act, 18 U.S.C. § 13. Accordingly, the jury was instructed on § 125.25 of the New York Penal Law which provides in relevant part as follows:

A person is guilty of murder in the second degree when:

1. With intent to cause the death of another person, he causes the death of such person ....

Murder in the second degree is a Class A–1 felony and New York Penal Law § 70.00(a)(2) provides that a Class A felony is punishable by life imprisonment.

A violation of 18 U.S.C. § 1959(a)(1), of which the defendants were convicted, made punishable by death or life imprisonment, is similarly classified as a Class A felony in 18 U.S.C. § 3559(a)(1).

New York Penal Law § 125.27, defining murder in the first degree, would not have been applicable to either defendant as a reading of that statute would readily reveal.

Thus, the only statute applicable to the crime of murder with which the defendants were charged and convicted was § 125.25.

The presentence report applied U.S.S.G. § 2E1.3(a)(2) which provides that in determining the base offense level for violent crimes in aid of racketeering activity (of which the defendants were convicted as charged in Count Two of the indictment) "the offense level applicable to the underlying crime or racketeering activity" should be applied. It is crucial to note

that the Application Note to that Guideline provides: "If the underlying conduct violates state law, the offense level corresponding to the most analogous federal offense is to be used." [3] The most analogous federal offense to New York Penal Law § 125.25, the jurisdictional limitation aside, is plainly 18 U.S.C. § 1111, the only federal statute explicitly criminalizing a murder "perpetrated from a premeditated design unlawfully . . . to effect the death of any human being" and defining that as "murder in the first degree." [4] The underlying crime or racketeering activity being murder, U.S.S.G. § 2A1.1 captioned "First Degree Murder" with a base offense level of 43 was applied. *See United States v. Minicone,* 960 F.2d 1099, 1110–11 (2d Cir.), *cert. denied,* 503 U.S. 950, 112 S.Ct. 1511, 117 L.Ed.2d 648 (1992); *United States v. Diaz,* 176 F.3d 52, 122–23 (2d Cir.), *cert. denied,* 528 U.S. 875, 120 S.Ct. 181, 314, 315, 145 L.Ed.2d 153 (1999).

In a "Motion for Reconsideration" annexed to an Affirmation by Counsel for Stantini, dated May 1, 2000, the Court is asked to consider a Statement of Facts consisting of eleven numbered paragraphs (Schoen Aff. 3–5). After noting that the statutes the defendants were convicted of violating were re-numbered from 18 U.S.C. § § 1952B(a)(5) and (a)(1) to 18 U.S.C.

§ § 1959(1)(5) and (a)(1) without substantive change, he states the following:

3) Both statutes 1952B(a)(5) and (a)(1) describe the criminal acts to include . . . or attempts or *conspiracy* so to do . . . . *Id.* The difference being:

(a)(5) is for the [conspiracy] to commit a murder, and

(a)(1) is for the [conspiracy] to attempt to commit a murder. Both, in aid of racketeering enterprises.

\* \* \* \* \* \*

5) The government's version of this criminal action alleged:

a) The act was committed in [conspiratorial] concert with at least, Robert Bisaccia, John Gotti, Salvatore "The Bull" Gravano, Giovanni Gambino, Lorenzo Mannino, and others (see PSI ¶ 1, p. 3).

\* \* \* \* \* \*

6) On or around November 26, 1993, this Court instructed the jury that it was to consider the "conspiracy" allegations of the statute towards a finding of guilt towards both charged counts. There was no special verdict slip every introduced to the jury to determine any culpability beyond the instructed conspiracy charge. (1st Degree Murder never even alleged).

---

**3.** The Application Note was in effect on November 1, 1987 and has been in effect continuously thereafter. There is thus no *ex post facto* issue.

**4.** Other statutes criminalizing murder which are not prosecutable under § 1111 but could be were it not for the jurisdictional limitation, make reference to that statute when the punishment to be imposed is "as provided in section 1111." *See, e.g.,* 18 U.S.C. §§ 115(b)(3); 351(a); 1751(a). In §§ 924(j) and 1512(a)(3)(A) the formulation is slightly different. § 924(j) provides, in relevant part, that "A person who causes the death of a person through the use of a firearm shall (1) if the killing is a murder (as defined in section 1111) be punished by death or life imprison-

ment . . . ." And § 1512(a)(3)(A) provides in relevant part, "The punishment for an offense under this section is in the case of a murder (as defined in section 1111) the death penalty or imprisonment for life." That Congress intended to punish the intentional murder of another by death or life imprisonment is thus made manifest by the reference to § 1111 in those other statutes.

That intention was also made manifest by U.S.S.G. Appendix A—Statutory Index which makes § 2A1.1. applicable to those offense and for others where death ensues. *See* 18 U.S.C. §§ 1992(b), 2118(c)(2), 2245, 2280(a)(H), 2281(a)(F), 2332a(3) and 2332b(c)(1)(A).

His view of § 1959 suggests that it is aimed at a conspiracy only and not at a substantive offense. He is wrong. § 1959(a) plainly aims at both, and subdivisions (1) and (5) provide the punishment for each. Thus:

(a) Whoever, ... for the purpose of gaining entrance to or maintaining or increasing position in an enterprise engaged in racketeering activity, *murders*, ... any individual in violation of the laws of any State or the United States, *or* attempts or conspires so to do, shall be punished -

(1) for murder, by death or life imprisonment, ....

\* \* \* \* \* \*

(5) for attempting or conspiring to commit murder ... by imprisonment for not more than ten years .... (emphasis added).

His view of the government's version of the criminal action as alleging that the "act was committed in [conspiratorial] concert" is a revision of the indictment. Count One is captioned "Conspiracy to Murder— Francesco Oliveri" and then charges the named defendants together with named others "for the purpose of gaining entrance to, maintaining and increasing position in the Gambino Family, an enterprise engaged in racketeering activity, *conspired to* murder Francesco Oliveri (Title 18, United States Code, Sections 1952(B)(a)(5) ....)" Count Two is captioned "Murder— Francesco Oliveri" and then charges the named defendants together with named others "for the purpose of gaining entrance to, maintaining and increasing position in the Gambino Family, an enterprise engaged in racketeering activity, *murdered* Francesco Oliveri. Title 18 United States Code, Sections 1952B(a)(1) (1984) 2 and 3551 *et seq.*" (emphasis added). It is late in the day to dispute that a substantive crime and a conspiracy to commit that crime are not the same offense. *See United States v. Felix,* 503 U.S. 378, 389, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992); *United States v. Sessa,* 125 F.3d 68, 71 (2d Cir. 1997).

His view of the jury charge as instructing the jury "that it was to consider the 'conspiracy' allegations of the statute towards a finding of guilt towards both charged counts" is wrong. The jury was instructed in part as follows on Count One:

· A conspiracy to commit a crime is an entirely separate and distinct offense from the substantive crime charged in Count Two of the indictment. For example, you can find that the defendant you are considering committed the substantive offense charged in Count Two, but that the government did not prove beyond a reasonable doubt the conspiracy charged in Count One. Or, you may find that the defendant you are considering did commit the crime of conspiracy but that the government did not prove beyond a reasonable doubt that he committed the substantive offense. (Tr. at 40–41.)

His assertion "that there was no special verdict slip ever introduced to the jury to determine any culpability beyond the instructed conspiracy charge" is wrong. In evidence as Court's Exhibit # 2 (see docket sheet entry # 54) is the Verdict Sheet given to the jury when they retired to deliberate and reads as follows:

How do you find the defendant Robert Bisaccia as to Count One of the indictment?

Guilty____ Not Guilty____

How do you find the defendant Robert Bisaccia as to Count Two of the indictment?

Guilty____ Not Guilty____

How do you find the defendant Orazio Stantini as to Count One of the indictment?

Guilty____ Not Guilty____

How do you find the defendant Orazio Stantini as to Count Two of the indictment?

Guilty____ Not Guilty____

184

In paragraph 8 of the Statement of Facts, he states that "Nowhere in Stantini's PSI report was there any mention as to which Guideline Manual was used for sentence determination. Stantini committed his crime during 1988 and was sentenced in 1995.[2]" The footnote reads: "A gleaning of the PSI report reveals some undefined Guideline Manual post November 1, 1990 was used since the writer describes the Count I punishment based on Guideline § 2A1.5(c)(1). This section was first introduced in a amendment # 311 on November 1, 1990. Previously, the conspiracy to commit murder was described under § 2A2.1." In paragraphs 9, 10 and 11, he states in substance that prior to November 1, 1990, U.S.S.G. § 2A1.1 was applied to first degree murder as per 18 U.S.C. § 1111 and therefore, Stantini was sentenced more onerously, in violation of the *ex post facto* clause, an argument never previously presented to the Court and provides further support for his claim of ineffective assistance. The argument is misplaced, based as it is entirely upon the conviction for conspiracy to murder and the guidelines applicable to that offense. The presentence report applied the guidelines correctly and the absence of a specific reference to the guidelines in effect prior to or after 1988 was irrelevant since either version would have produced the same result.

From the date of its inception on November 1, 1987 U.S.S.G. § 1B1.2(a) taught that the court should determine the offense guideline section applicable to the offense and conviction by referring to the Statutory Index to determine the Chapter Two offense guideline. That index indicated that for an offense under § 1959, reference should be made to U.S.S.G. § 2E1.3. That Guideline and the relevant Application Note to it has been set out above. 18 U.S.C. § 1111 is the most analogous offense to be used and § 2A1.1., First De-

gree Murder, is the guideline to which the Statutory Index directs.

Stantini observes that prior to November 1, 1990, U.S.S.G. § 2A2.1 was captioned "Assault with Intent to Commit Murder; Conspiracy or Solicitation to Commit Murder; Attempted Murder." A reading of that guideline readily reveals no provision for the case where the conspiracy then resulted in murder. Application Note 1, however, makes reference to the fact that the "maximum term of imprisonment authorized by statute for conspiracy to murder is life imprisonment (18 U.S.C. § 1112)." A reading of 18 U.S.C. § 1112 also readily reveals that it would have no application to the murder for which these defendants were convicted and yet, the Statutory Index referenced § 2A2.1 for that offense.

Amendment 311, effective November 1, 1990 was obviously designed to fill the gap. The title of 2A2.1 was amended to read: "Assault with Intent to Commit Murder; Attempted Murder." The existing guideline was amended by deleting it in its entirety and inserted instead in relevant part, was:

(a) Base Offense Level

(1) 25, [instead of the previous 20] if the object of the offense would have constituted first degree murder;

\* \* \* \* \* \*

The commentary to § 2A2.1 captioned "Statutory Provisions" was amended to replace the existing provisions with §§ 1113, 116(a) and 1251(c) none of which would have applied to the murder of Francesco Oliveri. The "Application Note" was amended by inserting the following additional note:

2. "First degree murder" as used in subsection (a)(1), means conduct, that if committed within the special maritime and territorial jurisdiction of the United

States, would constitute first degree murder under 18 U.S.C. § 1111.

U.S.S.G. § 2A1.5 was inserted for greater clarity to cover conspiracy or solicitation to commit murder, the phrase omitted from the caption to § 2A2.1.

The presentence report applies the Guideline as thus amended to Count One arriving at an adjusted offense level of 43 (PSI ¶ 25) but in ¶ 33 indicates that the statutory maximum term of imprisonment is 10 years pursuant to § 1959(a)(5).

Count Two, the substantive crime of murder, however, required the application of the same guideline § 2A1.1(a), an adjusted offense level of 43 (life imprisonment) which was also the maximum term of imprisonment pursuant to § 1959(a)(1).

Stantini, however, was given a two point adjustment for his role in the offense so that his base offense level was reduced to 41 providing for a guideline range of 324 to 405 months given a criminal history category of I, and he was sentenced at the low end of that range to 324 months. A similar two point adjustment was not warranted for Bisaccia and he was sentenced to life imprisonment.

The attack upon the sentence, invoking *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), is also misplaced. It presupposes that the elements of the offense (murder in the first degree) were not presented to the jury who were instructed to determine whether the defendants committed the crime of second degree murder in violation of N.Y. Penal Law § 125.25 and were then sentenced for first degree murder. *Apprendi* decided that any factor, other than a prior

conviction, that increases the statutory maximum sentence must be submitted to the jury. *Apprendi* was not implicated here at all. There was no additional factor to be submitted to the jury. As has already been indicated, second degree murder is a class A–1 felony under N.Y. Penal Law § 125.25(d)(4) and pursuant to N.Y. Penal Law § 70.00(2)(a) a class A felony is punishable by life imprisonment. The crime for which the defendants were convicted, "murder in aid of racketeering," in violation of 18 U.S.C. § 1959(a)(1), is punishable by death or life imprisonment. The statutory maximum sentence was not increased whether viewed through the lens of §§ 125.25 or 1959(a)(1) and *Apprendi* is not offended.[5]

The petitioners' claim of ineffective assistance of counsel insofar as that ineffectiveness is based upon their failure to assert the erroneous application of the Guidelines and suffered their clients to be sentenced to excessive terms of imprisonment is meritless. Counsel's assistance does not fall below any objective standard of reasonableness by failing to press a legally indefensible position.

For all the foregoing reasons, the petitioners' applications for a certificate of appealability and for relief pursuant to Rule 60, Fed. R. Civ. Proc. are denied. References made in the course of this opinion to Stantini are applicable to Bisaccia who has joined in Stantini's applications and all of whose claims are similarly without merit.

SO ORDERED.

---

**5.** § 1959(a)(1) was amended in 1994 to read as it now does providing for death or life imprisonment. Prior thereto and at the time the murder of Francisco Oliveri was committed, it read: "for murder or kidnapping by

imprisonment for any term of years or for life . . . ." In either case, the statutory maximum was not exceeded and *Apprendi* was not implicated.